UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RENEE OLIVER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-288 |
| | ) |
| JANET NAPOLITANO, Secretary, | ) |
| | ) |
| U.S. Department of Homeland Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Renee Oliver, an employee of the Department of Homeland Security ("Department"), brings this action against defendant Janet Napolitano in her official capacity as Secretary of the Department of Homeland Security.[1] Oliver alleges that the Department discriminated against her on account of race and reprisal in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Currently before the Court are plaintiff's Amended Motion for Leave to File First Amended Complaint, and defendant's Opposition to plaintiff's Motion to Amend/Correct Complaint, as well as defendant's Motion for Summary Judgment. Upon consideration of the submissions of the parties and the relevant law, plaintiff's Motion to Amend/Correct Complaint is denied and defendant's Motion for Summary Judgment is granted.

---

[1] Plaintiff's complaint originally named Michael Chertoff as defendant (*See* Compl. ¶ 4). Pursuant to Rule 25(d), if a public officer is sued in his or her official capacity and ceases to hold office, "the officer's successor is automatically substituted as a party." FED. R. CIV. P. 25(d). Upon assuming office, Secretary Napolitano became defendant in this case.

## I. FACTUAL BACKGROUND

*A.    General Background*

Plaintiff is an African American female who began working for the United States Department of Justice in 1986 as a student intern participating in the Stay in School Program. ([31-1] Oliver Decl. ¶ 2, May 4, 2010.)  She held the position of a clerk typist from 1987-1990, working initially for Immigration and Naturalization Service ("INS"), the predecessor to the U.S. Immigration and Customs Enforcement ("ICE") agency within the Department of Homeland Security ("DHS").  (Def.'s Stmt. Material Facts Not in Genuine Dispute ¶ 1, Feb. 23, 2010 [hereinafter Def.'s Facts]; Oliver Decl. ¶ 2.)  In 1990 plaintiff became an account technician in the INS Office of Financial Management.  (*Id.*)

During the relevant time period plaintiff worked with seven other account technicians, all of whom were African-American.  (Def.'s Facts ¶¶ 4, 6.)  In 1991, Judy Harrison, a manager at the Department, informed plaintiff and all other account technicians that, in order to be promoted to an accountant position, they needed to earn 24 college credit hours towards an accounting degree.  (Oliver Decl. ¶ 3.)  Accordingly, the plaintiff and other account technicians who desired a promotion attended the necessary classes while maintaining their position.  (*Id.*)

From 2000 through 2002, plaintiff was reassigned to different sections within INS. (Oliver Decl. ¶ 4.)  For instance, in October 2001, plaintiff was transferred to the Travel Section and remained there until March 2002, when she was transferred to the Headquarters Section ("Headquarters").  ([1] Compl. ¶ 8, Feb. 20, 2008.)

In March 2009, plaintiff was promoted to the position of Mission Support Specialist, and is currently a GS-9.  ([25-3, Ex. 2] Oliver Dep. 7:2-22, Oct. 14, 2009.)  However, before this promotion and therefore throughout the relevant time period, plaintiff was a GS-7.  (*Id.*)

B.  *September 2001 Accountant Vacancy and March 2002 Reassignment*

In September 2001, while plaintiff was stationed in the Travel Section, the position of GS-0510-7/9 Accountant was advertised as Vacancy Announcement No. 01-30-011 ("September 2001 Vacancy") ([25-4, Ex. 5] Oliver Aff. ¶¶ 8, 9, July 8, 2005.)  Plaintiff applied for the position and her application was referred to the selection team along with five other candidates. (Def.'s Facts ¶ 18.)  Bernard Rubenstein, a Caucasian male, and Angela Winstead, an African-American female, held interviews.  (*Id*. at 20.)  An additional candidate for the position was Ms. Tanner, an African American female, who was working in the Headquarters section when she applied.  (Oliver Dep. p. 108:2-8.)  Following the interviews of all candidates Ms. Winstead recommended Ms. Tanner for the position and she was selected.  ([25-4, Ex. 8] Winstead Aff. ¶ 6.)

In February 2002, Ms. Oliver met with Bernard Rubenstein to protest alleged discriminatory treatment and her belief that Ms. Tanner did not meet the minimum credit-hour requirement for the accountant position.  (Oliver Decl. ¶ 5.)  At this meeting that she learned of her transfer to Headquarters ("March 2002 Reassignment") and protested on the basis that this position had no promotion potential.  (*Id*.)

C.  *May 2002 EEOC Complaint (First EEO Contact)*

On May 7, 2002, plaintiff contacted the Equal Employment Opportunity Office ("EEO") regarding her reassignment into a position that allegedly did not have promotion potential.  ([25-5, Ex. 21] Rpt. EEO Counseling 2, July 22, 2002 [hereinafter 1st EEO Rpt.].)  On June 19, 2002 plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") regarding this issue.  ([25-5, Ex. 22] Compl. Discrim., June 19, 2002 [hereinafter 1st

EEOC Compl.].) On the EEOC complaint form plaintiff checked the boxes for Race (black) and Sex (female) to indicate why she believed she was discriminated against. (*Id.*; Def.'s Facts ¶ 44.)

D.   *May 2002 Accountant Vacancy*

The Department advertised the position of GS-0510-7 Accountant through Vacancy Announcement 02-19-DE010 ("May 2002 Vacancy"), and plaintiff applied for this position on May 24, 2002. (Oliver Aff. ¶ 13.) At the time plaintiff applied for this position she was a GS-7. (Def.'s Facts ¶ 27.) The Department did not end up filling the May 2002 Accountant Vacancy. Instead the Vacancy Announcement was returned unused to the Office of Human Resources and no selections were made at the GS-7 level. ([52-3, Ex. 3] EEOC Hrg. Tr. 116:10-16, Sept. 8, 2005 (Edward Bain) [hereinafter Bain Test.]; [52-4, Ex. 14] DEU Certificate, Aug. 12, 2002.)

The reason this vacancy was not filled is because in the same month the Department issued a separate announcement (Vacancy Announcement No. 02-19-DE004). This announcement was also for an Accountant position, but sought candidates of higher government-level qualifications. The hiring official, Mr. Bain, stated that he was looking to hire at the highest level possible and therefore began his interviews at the GS-13. (Def.'s Facts ¶ 31; [25-4, Ex. 16] Edward Bain Decl. ¶ 3.) On August 12, 2002, Stephanie Pryor, a Caucasian female, was hired as a GS-12 for the Accountant position under Vacancy Announcement No. 02-19-DE004. (Oliver Decl. ¶ 7; Def.'s Facts ¶ 32.)

E.   *September 2002 EEOC Complaint (Second EEO Contact)*

On September 11, 2002, plaintiff again contacted the EEO Office adding to her complaint her non-selection for the May 2002 Accountant Vacancy. On November 14, 2002, plaintiff filed a second formal EEOC complaint alleging three claims: 1) non-selection for September 2001

4

Accountant Vacancy; 2) non-selection for May 2002 Accountant Vacancy; and 3) details to three different units between September 1998 and May 2002. ([25-5, Ex. 23] Rpt. EEO Counseling 2, Nov. 15, 2002 [hereinafter 2d EEO Rpt.].) In this formal complaint plaintiff alleged discrimination on the basis of race, but unlike her previous complaint she did not raise gender discrimination. This is evident by the fact that, on the EEOC complaint form, plaintiff checked the box for "Race" (black) but did not check the box for "Sex" when asked why she believed she was discriminated against. ([25-5, Ex. 24] Compl. Discrim., Nov. 14, 2002 [hereinafter 2d EEOC Compl.].) On December 31, 2002 the three claims were accepted for investigation. ([25-5, Ex. 24] Letter from D. Diane Weaver, Director, EEO Office, INS, DOJ, to renee Oliver, Dec. 31, 2002.)

F.  *May 2003 Accountant Vacancy*

On May 23, 2003, while plaintiff was stationed at Headquarters, the Department advertised for a GS-510-7/9/11 Accountant position through Vacancy Announcement No. MP & RP 03-21-005 ("May 2003 Vacancy"). After applying for the position plaintiff was interviewed by Jim Alfredo, Karen Gaskin, and Rebecca Schorr. (Oliver Aff. ¶ 17.) The same selection team also interviewed two other candidates in addition to Ms. Oliver, and selected Renee Douglas, an African-American female, for the position. (EEOC Hrg. Tr. 146-147, 150-155 (Rebecca Schorr); EEOC Hrg. Tr. 182:21-190:15 (James Alfredo); [25-5, Ex. 19] Gaskin Decl. ¶ 3.) Mr. Alfredo and Ms. Gaskin did not know of plaintiff's EEO activity at the time of their interview and selection of Renee Douglas. (Gaskin Decl. ¶ 5; EEOC Hrg. Tr. 190:16 to 191:17 (James Alfredo).) Ms. Schorr cannot recall whether she was aware of plaintiff's EEO activity at the time of the interview. (EEOC Hrg. Tr. 163-164 (Rebecca Schorr).)

5

G.   *July 2004 EEOC Complaint Amending September 2002 EEOC Complaint*

On July 14, 2004 plaintiff amended her September 2002 EEOC complaint to add a claim of non-selection for the May 2003 Vacancy (Def.'s Facts ¶ 48.)

H.   *Decision of EEOC on Plaintiff's Formal Complaints*

The EEOC addressed plaintiff's four claims described above, all of which alleged discrimination based on race and reprisal. Though plaintiff alleged gender discrimination on an initial EEOC Complaint Form, during the hearing on her complaints plaintiff abandoned her theory of gender discrimination ([25-5, Ex. 26] EEOC Decision No. 100-2004-00183X, at pt. I. n.2. (2005) [hereinafter EEOC Decision].) The EEOC thus decided plaintiff's claims based only on racial discrimination and reprisal (*See id.*)

The EEOC granted summary judgment on behalf of the Department on the issue of the September 2001 Vacancy after noting that the woman selected for the position was also an African-American woman. (*Id*. pt. III.1.) The remaining issues raised by the plaintiff proceeded to hearing and the EEOC found that the preponderance of the evidence did not support findings of discrimination based on race and reprisal. (*Id*. pt. III.2.b-IV.) After this decision, in December 2005, plaintiff appealed to the EEOC Office of Federal Operations (OFO). *See Oliver v. Chertoff*, EEOC Appeal no. 0120061213, 2007 WL 4224684 (2007) [hereinafter EEOC Appeal]. On November 21, 2007 the EEOC/OFO denied this appeal, agreeing with the EEOC's analysis and conclusions. (*Id*.) Plaintiff filed this case in February, 2008 based on these intentional discrimination claims.

## II.     ANALYSIS

### A.     *Plaintiff's Motion to Amend/Correct Complaint*

Plaintiff's original complaint herein alleged discrimination based only on race and reprisal. (Compl. ¶ 17.) Plaintiff has now filed a motion to amend her complaint to add a claim of gender discrimination to the existing claims, stating that this complaint was not included in the initial complaint due to a typing error. ([34] Pl.'s Mot. to Am. Compl. p. 2., Feb. 23, 2010 [hereinafter Pl.'s Mot.].) Defendant opposes plaintiff's motion, alleging that to permit the addition of a claim after discovery has closed would cause defendant undue burden, and additionally that the amendment would be futile. (*See* [35] Def.'s Opp'n Pl.'s Mot Amend/Correct Compl., Apr. 19, 2010 [hereinafter Def.'s Opp'n].) Although prejudice to the defendant would be minimal, the futility of plaintiff's proposed amendment due to issues of exhaustion warrants denial of plaintiff's motion.

Rule 15(a) provides that "a party may amend his complaint once as a matter of course within twenty-one days after the complaint is served or, if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1) (as amended). "In all other cases, a party may amend its pleading only with the written consent of the opposing party or leave of the court." *Id.* at 15(a)(2). Defendant filed her Answer on Aug 14, 2008, and plaintiff filed her Motion to Amend on March 26, 2010, well after the twenty-one day period had expired.

Rule 15(a) also states that leave to amend should be freely given "when justice so requires". This standard, however "does not mean that leave must be granted in all cases." *Graves v. United States*, 961 F. Supp. 314, 317 (D.D.C. 1997) (citing 6 Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (2d ed. 1990)). Rather, the "proper exercise of discretion requires that the district court provide reasons." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *National Treasury Employees Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) saying the ruling must be based "on a valid ground"). In fact, the Supreme Court has stated that the decision to grant or deny a motion to amend is within the discretion of the District Court as long as justified reasons are presented. *Foman v. Davis*, 371 U.S. 178, 180 (1962) (stating that a lack of justifying reasons for the denial is considered an abuse of discretion).

The Department argues that plaintiff's Motion to Amend should be denied in order to avoid further delays, pointing to the fact that discovery has been closed for half a year and would need to be reopened if the motion was granted. ( *See* Def.'s Opp. to Mot. to Amend/Correct Compl.) Further, defendant argues that plaintiff should have realized her mistake "when defendant filed its Answer or, at the latest, during the discovery period." (Def.'s Opp'n. p. 5.) Defendant also suggests that plaintiff has not proffered an acceptable reason for her delay when stating that the gender claim was simply inadvertently omitted. (*Id*.)

While the Court appreciates defendant's desire to move forward expeditiously, and recognizes that timeliness may be a factor when considering a motion to amend, in this situation the delay caused by granting the Motion to Amend cannot stand alone as the soul ground for refusal. There is no date set for trial and the concern for delay does not outweigh the liberal standard typically applied. *See Ellis v. Georgetown University Hosp.*, 631 F. Supp. 2d 71, 80 (D.D.C. 2009) (allowing leave to amend despite the need to re-open discovery); *Ponce v. Billington* 652 F. Supp. 2d 71 (D.D.C, 2009) (stating closure of discovery is a weaker argument than an exhaustion of administrative remedies when considering a motion to amend the

8

complaint); *see also Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.3d 243, 246-48 (D.C. Cir. 1987) (deciding leave to amend complaint was denied based on more than the need for discovery to be re-opened).

B.  *Administrative Exhaustion*

The Department's stronger argument is based on the statutory scheme of Title VII, which "requires a plaintiff to exhaust his or her administrative remedies before a civil action may be filed in federal court." *Robinson-Reeder v. Am. Council on Educ.,* 532 F. Supp. 2d 6, 12 (D.D.C. 2008). The administrative charge requirement "should not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W.&S. Life Ins., Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, this requirement does demand some degree of specificity and is not a "mere technicality" since a court "cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process. *Id*. at 907.

In this case the plaintiff raises four claims: (1) that she was detailed into a section without promotional opportunities on March 22, 2002; (2) non-selection for September 2001 Vacancy; (3) non-selection for May 2002 Vacancy; and (4) non-selection for May 2003 Vacancy.

Plaintiff did not exhaust her administrative remedies as to gender discrimination with respect to these claims because she either did not raise gender as an issue at all, as with claims (2), (3), and (4), or she abandoned her gender complaint, as with claim (1). Because plaintiff may only bring claims before this Court that were exhausted before the EEOC, gender based claims would not survive a motion to dismiss, making any attempt to add them futile.

The issue of plaintiff's reassignment, claim (1), is the only claim for which plaintiff initially brought up a gender issue in her EEO complaint. However, the administrative record

9

indicates that in the EEOC hearing on her formal complaints, plaintiff testified through counsel that her claims were based only on racial discrimination and reprisal; she did not mention gender. (EEOC Decision No. 100-2004-00183X, at pt. I. n.2.) Plaintiff therefore abandoned her gender claim during the administrative process. [2]

In filing her second EEO complaint, which raised claim (2) and (3), plaintiff used a standard EEOC form. On this form plaintiff checked "Race and "Reprisal" boxes, but did not check the "Sex" box, demonstrating an intention to claim only race and reprisal as the reasons for her alleged discrimination. (2d EEOC Compl.].) Additionally, the EEOC did not discuss or analyze gender claims in their judgment or in their appeal. (EEOC Decision; EEOC Appeal.) Additionally, claim (4) was added on July 14, 2004. Nothing in the administrative record indicates an intention to claim gender as a basis for her alleged discrimination. Based on the forms provided to the EEOC by the plaintiff, and the EEOC's decisions regarding the plaintiff's claims, it is evident that the plaintiff did not intend, nor did the EEOC interpret there to be a claim based on gender retaliation.

As stated above, the statutory scheme of Title VII requires complete exhaustion of a plaintiff's administrative remedies before bringing a civil action in federal court. *Robinson-Reeder*, 532 F. Supp. 2d, 12. This means that "[t]he theories of discrimination in a plaintiff's lawsuit are limited to those theories contained in the EEOC Charge [she] filed." *Marcelus v. Corrections Corp. of Am.*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008). An important reason for this requirement is to "[give] the charged party notice of the claim." *Park*, 71 F.3d 907 (citing *Laffey v. Northwest Airlines Inc.*, 567 F.2d 429 (D. C. Cir. 1976)). In this situation the administrative records would not give the defendant notice of a gender claim, and contain no factual allegations

---

[2] When granting summary judgment for the Department on claim (2), the EEOC erroneously mentioned a claim of discrimination based on sex. (EEOC Decision III.1.) Plaintiff abandoned the theory of gender discrimination. (EEOC Decision n.2). Additionally, this complaint was not analyzed in any way by the EEOC. For these reasons it is not recognized by this Court.

that would support such a claim. *See Park*, 71 F.3d 907 (discussing a lack of factual allegations as an indication that a claim was not exhausted).

Plaintiff abandoned her one gender claim relating to her March reassignment, and has not pressed any other gender claims relating to her three non-selections for Accountant positions. Therefore, she has not exhausted the administrative process as to any gender claims. *See* FED. R. CIV. P. 12(b)(6); *Marcelus v. Corrections Corp. of Am.*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008) (dismissing unexhausted reprisal claim). In fact, had she alleged gender discrimination in her original complaint the claim would not have survived a motion to dismiss. In situations where the proposed claim would not survive a motion to dismiss, the motion to amend the complaint is futile and should be denied. *Ponce v. Billington* 652 F. Supp. 2d 71 (D.D.C. 2009); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

Because the plaintiff has not exhausted her administrative remedies she is prevented from bringing these claims to this Court. The Motion to Amend the Complaint is futile, and is therefore denied.

C. *Defendant's Motion for Summary Judgment*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that there is an "absence of genuine issue of material fact" in dispute. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant's evidence is to be believed, and "all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986). It is not enough, however, for the non-moving party to show that there is "*some* factual dispute." *Id.* at 247. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. A small amount of evidence that supports the non-moving party's position is not sufficient. *Id*. at 252. Rather summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id*.

    a.    Title VII Claim

Plaintiff alleges four instances of discrimination based on race and reprisal against the defending Department in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. For the reasons set forth below the Department's motion for summary judgment on these claims will be granted

    b.    Legal Standard

While in the past a court would first need to conclude whether the plaintiff made a prima facie case of discrimination, this determination has become a "largely unnecessary sideshow." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).[3] Instead, where the defendant has asserted legitimate, non-discriminatory reasons for the challenged decisions, this Court is admonished that it "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case…." *Id*. This Court is tasked to "resolve one central question: Has the employer produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason, and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id*. Essentially, this Court must determine if the plaintiff produced enough evidence such that a

---

[3] This Court would look to the factors laid out in *Mcdonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) which stated a plaintiff with a Title VII claim could establish a prima facie case by showing (i) the employee belongs to a racial minority or other protected class; (ii) the employee "applied and was qualified for a job for which the employer was seeking applicants"; (iii) despite the employee's qualifications he was rejected and; (iv) after the rejection "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id*. at 802.

reasonable jury would find that the Department's non-discriminatory reasons are mere pretext for the underlying discrimination.[4]

Using the *Brady* court's direction to directly address the pretextual analysis when non-discriminatory reasons are given, this Court will discuss each of the four alleged discriminatory actions to determine if a reasonable jury could find that the non-discriminatory rationale of the employer is mere pretext for unlawful discrimination.

    c.    March 2002 Reassignment

Ms. Oliver's first claim of unlawful discrimination stems from her reassignment in March of 2002 to the Headquarters Section, which she believed lacked any promotional opportunity. (Compl. ¶ 8.) The Department has responded to Ms. Oliver's complaint by providing several non-discriminatory and legitimate business reasons for their decisions to transfer Ms. Oliver into the Headquarters Section. Mr. Rubenstein testified that he knew Ms. Oliver had worked in the Headquarters Section previously and believed her skill set could be used in that department. (*Id*. at ¶ 7.) Additionally, Mr. Rubenstein stated in his affidavit that the Department moved Ms. Oliver in an attempt to "find the best fit for her." ([25-4, Ex. 7] Rubenstein Aff. ¶ 7.) When Ms. Oliver expressed concern in their February 2002 meeting that the position in Headquarters provided no promotion potential for her, Mr. Rubenstein stated, "you come to work and do a good job, you will be recognized," indicating a willingness to promote Ms. Oliver. (*Id*. at ¶ 5.) In fact, the other account technicians, all African-American women in Ms. Oliver's protected class, were also transferred to different divisions, albeit not as frequently as she was. (Oliver Dep. p.71:15-72:7.) Finally, Ms. Oliver admits that she could have been hired as an Accountant

---

[4] The D.C. Circuit has reaffirmed the process of bypassing the prima facie finding and solely determining if the employer's reasons are mere pretext. *Adeymi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (stating the prima-facie case aspect of *McDonnell Douglas* is irrelevant when an employer has asserted a legitimate, non-discriminatory reason for its decision).

from this position – Ms. Tanner, an African-American woman, was promoted from the Headquarters position a few months before Ms. Oliver was reassigned to that section – demonstrating that promotion potential does exist in this section. (Oliver Dep. p. 107:18-108:1.)

The question, therefore, is whether the plaintiff provided enough evidence that a reasonable jury may conclude that the actions of the Department were a pretext for discrimination based on race and reprisal. There is no indication that any discrimination based on race occurred. Ms. Oliver has not provided any evidence to indicate that individuals outside of her protected class were treated differently than she was, nor has she supplied any evidence that would give way to an inference of racial discrimination. With regards to the plaintiff's reprisal claim, it is clear that no protected activity occurred before the Department made the decision to transfer her into the Headquarters Section. It was after Ms. Oliver learned of her transfer, that she indicated her belief that she was a victim of discrimination. This was the first mention of her belief of discrimination, and she did not make any official EEO contact until May 2002.

Because Ms. Oliver has not met her burden of providing evidence that would lead a reasonable jury to conclude that the actions of the Department were a pretext for discrimination, the Department's motion for summary judgment is granted on this claim.

      d.     Non-Selection for September 2001 Vacancy

The plaintiff's next claim of unlawful discrimination arises from the selection of Ms. Tanner for the September 2001 Vacancy position advertised under Vacancy Announcement No. 01-39-011. The Department claims that Ms. Oliver did not exhaust her administrative remedies with respect to her race and reprisal claim for this non-selection as the basis for their summary judgment argument. However, since the EEOC accepted this complaint and in fact granted partial summary judgment in favor of the Department on this claim without raising a timeliness

issue, the Department has waived this defense. *See Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997).

The Department has additionally provided non-discriminatory reasons for Ms. Oliver's non-selection. The Department states Ms. Winstead, an African-American woman who held the interviews, recommended Ms. Tanner, also an African-American female, for the position. ([25-4, Ex. 8] Winstead Aff. ¶ 6.) Ms. Winstead stated that she believed Ms. Tanner to be "more qualified" for the position "based on her interview," and additionally that Ms. Tanner seemed "more aware of what [the Department was] looking for and how her skills would add to the office. (*Id*.) Mr. Rubenstein, who was also involved in the hiring process, stated that he believed "Ms. Tanner's knowledge of the finance system was better than that of Ms. Oliver's." (Rubenstein Aff. ¶ 9.) Ms. Oliver has not provided evidence to convince a reasonable jury that these reasons are a pretext for discrimination, therefore based on these facts there is no indication that any discrimination based on race occurred. *See Brady* 520 F.3d at 494.[5]

Regarding Ms. Oliver's retaliation claim, it is clear from the timeline of facts that Ms. Oliver did not initiate any protected EEO activity until after the selection of Ms. Tanner. Ms. Tanner was selected to the position on December 12, 2001. ([25] Def.'s Mot. Summ. J. ¶ 21, Ap. 12, 2010.) Ms. Oliver did not learn about this decision until May 2002. (Oliver Aff. ¶ 3.) She contacted the EEO office to make her first official complaint around this same time in May 2002. (1st EEO Rpt.) Therefore the decision rendered in December to hire Ms. Tanner over Ms. Oliver could not have been based on retaliatory motives.

---

[5] Though an analysis of the plaintiff's prima facie case is not required, it should be noted that the plaintiff has not met this burden on this claim. Generally a prima-facie case for race discrimination contains four elements: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff applied for and qualified for the position; (3) that the defendant rejected the plaintiff; and (4) that the position was filled by a similarly qualified employee outside the protected class. *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 155 (D.D.C. 2002). In this case a similarly qualified employee within the plaintiff's protected class (Ms. Tanner, an African-American female) in fact filled the position.

Because Ms. Oliver has failed to dispute the legitimate non-discriminatory reasons given by the Department for her non-selection the Department's motion for summary judgment is granted on this claim.

e. Non-Selection for May 2002 Vacancy

Ms. Oliver's third claim of unlawful discrimination arises out of her non-selection for the May 2002 Vacancy advertised under Vacancy Announcement No. 02-19-DE010. The Department has provided legitimate non-discriminatory reasons for Ms. Oliver's non-selection, specifically that no candidate was in fact chosen for this position and that the certificate was cancelled. Instead, the Department explained that the hiring official chose to fill the vacant position with the highest grade level possible. (Bain Decl. ¶ 3.) The Department, therefore, filled his position through Vacancy Announcement No. 02-19-DE004, hiring Stephanie Pryor, who is a GS-12 (*Id*.) Ms. Oliver admits that she is not at a GS-12 grade level nor was she qualified to apply for the DE004 position (Oliver Dep. p. 127:6-128:7.) The Department maintains that the specific announcement Ms. Oliver applied to was returned unused and that Mr. Bain did not even see Ms. Oliver's application because he had filled the position with a higher grade level (Bain Decl. ¶ 3.) Ms. Oliver has provided no evidence to dispute these facts or that would lead a reasonable jury to conclude that the Department's non-discriminatory reasons are mere pretext for the underlying discrimination.

Ms. Oliver's claim for unlawful discrimination based on retaliation must also fail. The basis of Ms. Oliver retaliation claim is that Judy Harrison and Bernard Rubenstein, who were aware of her EEO activity as the selections for DE010 and DE004 were taking place. (Oliver Opp'n. p. 5.) However, the selecting official Edward Bain stated there was only one vacancy available, though they advertised at all grade levels. (Bain Decl. ¶3.) Additionally, he testified

that he had no knowledge of Ms. Oliver's previous EEO activity. (EEOC Hrg. Tr. p. 199:18-120:3.) Ms. Oliver admitted that she had not named Mr. Bain as an alleged discriminating official when she contacted the EEO office in May 2002 regarding her reassignment to a position without promotion potential. (EEOC Hrg. Tr. p.86:6-12.) Ms. Oliver has provided no evidence to indicate to a reasonable jury that Mr. Bain did in fact know of her EEO activity or that his decision to hire someone at the highest grade level possible were a pretext for retaliation.

  f. Non-Selection for May 2003 Vacancy

Ms. Oliver's final claim for unlawful discrimination arises from her non-selection for the May 2003 Vacancy advertised under Vacancy Announcement No. MP & RP 03-21-005. The Department has identified legitimate non-discriminatory reasons for Ms. Douglas's selection. Karen Gaskin, Rebecca Schorr and James Alfredo interviewed all candidates. (Gaskin Decl. ¶ 3.) Though Ms. Gaskin recognized that all three women who were interviewed for the position were qualified, she stated that she recommended Ms. Douglas for the position based on her responses to the interview questions (*Id*. at ¶ 4.) Ms. Schorr stated that she recommended Ms. Douglas due in part to the fact that her explanations in her application "were short and clear and they gave an identifiable example or an easy to follow method for her past duties" (EEOC Hrg. Tr. 156:7-10.) Additionally, Ms. Douglas's performance evaluation had been slightly higher than that of Ms. Oliver. (*Id*. at p. 188:1-4.) Ms. Oliver has provided no evidence that would lead a reasonable jury to believe these reasons are a pretext for discrimination.

The retaliation claim must also fail since Ms. Oliver has failed to create a material issue of fact regarding whether any member of the hiring team was aware of her previous EEO activity or whether that played any factor in the team's decision to select Ms. Douglas. Both Mr. Alfredo and Ms. Gaskins claimed to have no knowledge of any protected activity engaged in by Ms.

Oliver. (EEOC Hrg. Tr. 190:16-191:17; Gaskin Decl. ¶ 5.) In fact, neither individual were named in any of Ms. Oliver's previous reports to the EEO. Though there is some issue over whether or not Ms. Schorr was aware of Ms. Oliver's protected activity, there is testimony that no such activity was discussed in the hiring meeting, and all three members unanimously chose Ms. Douglas for the position. (EEOC Hrg. Tr. 163:19-164:5, 190:16-191:17.) Ms. Oliver has provided no evidence to the contrary, or to convince a reasonable jury that the reasons given by the Department are in fact a pretext for discrimination.

Because Ms. Oliver has not met her burden of evidence that would lead a reasonable jury to conclude the actions taken by the Department were a pretext for discrimination the Department's motion for summary judgment is granted for this claim.[6]

I. **CONCLUSION**

In conclusion, concerning plaintiff's Motion to Amend, the defendant has not shown that the delay caused by granting the motion would be significant enough to ignore the typically liberal standard used. However, because plaintiff's proposed gender claims were not exhausted at the administrative level and would not survive a motion to dismiss, the amendment is futile. Plaintiff's motion is therefore denied.

Concerning the defendant's motion for summary judgment, the Department has identified non-discriminatory explanations for each of Ms. Oliver's claims for which no reasonable jury would conclude were a pretext for discrimination against the plaintiff. Further, none of the evidence produced by Ms. Oliver substantially undermines those grounds. Specifically, two of the women given jobs for which plaintiff was not selected were within her protected class. As such, plaintiff fails to show that the Department treated similarly situated Caucasian employees

---

[6] Additionally in this claim, as in Ms. Oliver's second claim, she fails to make a prima facie case since the person who was ultimately hired for the position is a similarly qualified employee within Ms. Oliver's protected class.

more favorably and therefore fails to carry her burden. Therefore, the Department's motion for summary judgment is granted.

A separate order shall issue this date.

August 9, 2010                                             _____/s/_____
                                                           ROYCE C. LAMBERTH
                                                           Chief Judge
                                                           United States District Court